FILED
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

2018 JUN -5 P 1:52

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>PAUL KENNETH CROMAR, and<br>BARBARA ANN CROMAR, et al.<br>Defendants. | CASE NO.:<br>2:17-cv-01223-RJS<br><br>Defendants' Reply<br>&<br>Motion for a More Definitive Statement |

## Defendants' Reply and
## Motion for a More Definitive Statement

1)   Comes now, Paul Kenneth: Cromar and Barbara Ann: Cromar, Defendants, *pro se, en pauperis*, in this matter, who hereby file this *Reply* to the plaintiff's improper *arbitrary* and *capricious* invocation of authority in this civil action against these specific defendants, and hereby *Moves* this court under the Federal Rules of Civil Procedure (F.R.C.P.) Rule 12(e) to compel the plaintiff to provide (on the record of the action) a more definitive statement establishing the complete, fully granted, *subject-matter jurisdiction* of the court that it is alleged by the plaintiff, can be taken over this civil action by this federal district court.

2)   The reason why this is necessary is because the plaintiff continues to fail in its duty to disclose in this action the **complete** and **specific** *constitutional* foundational elements of the *subject-matter jurisdiction* of the court that it invokes, and has refused to specifically identify, even the exact constitutionally granted *taxing power* and alleged enforcement authority that applies to the *claims* of the tax, alleged owed by the defendants, that are made in the plaintiff's arbitrary and non-specific *Complaint* that was filed in this action.

1

3) Further, the plaintiff United States, in the federal district court of New Jersey, in Case Number: 2:14-cv-3937 (KM)(JBC), was happy to accept that district court's ruling and holding in that case (still in the district court today), that the federal personal income tax is a *direct* tax (and *direct* taxing *power*) that is newly authorized under the 16th Amendment **without** the constitutional limitations that are imposed on **all** *direct* taxation that is authorized to be enforced under Article I of the U.S. Constitution; (Order extract Exhibited)

4) However, in Case Number: 3:15cv161, currently in the federal district court in Eastern Virginia (Richmond Division), the plaintiff United States was just as happy, by their brazen and shameless *duplicity,* to accept in that case **exactly the opposite,** *i.e.*: the federal district court held that the federal income tax is **only** constitutionally authorized as an *indirect* tax under the Article I, Section 8, clause 1, taxing authorities, which are subject to the rule of *uniformity* established thereunder. The federal district court in Virginia ruled that the federal personal *income* tax is **not** a *direct* tax under the 16th Amendment at all! (Order extract Exhibited)

5) The plaintiff's inconsistent, *arbitrary* and *capricious* acceptance of the invocation by the federal court of completely different *subject-matter jurisdictions* and alleged taxing authorities of the U.S. Constitution to enforce the same tax differently in the different States, is not only **unconstitutional,** it is **reprehensible,** and incomprehensible.

6) Which authority is alleged to apply to this case, and these defendants? – The plaintiff **refuses to say.**

7) But the defendants **MUST** be told by the plaintiff (or the district court itself) the **precise** and **specific** *subject-matter jurisdiction* of the court alleged invoked, and properly taken by the court over the claims made in the legal action, - or he **cannot even** answer the plaintiff's *Complaint,* - because he is prejudicially and wrongfully **denied** by the court the ability to do so, by being denied the required legal *due process* of compelling the plaintiff to disclose the essential information identifying the alleged fundamental constitutional foundation for the *claims* for tax alleged as the legal cause of the action against the

defendants, as made in the *claims* made in the plaintiff's *Complaint* that was filed with the court.

8)   *Whereas* the federal personal income tax has historically been deemed to be a granted power for Congress tax ***indirectly*** under authority of Article I, Section 8, clause 1, of the U.S. Constitution, *i.e.*: to tax by *Impost, Duty,* and *Excise*; - which *taxing powers* are specifically made subject to the *Rule of Uniformity*;

> "The great object of the Constitution was, to give Congress a power to lay taxes, adequate to the exigencies of government; but they were to observe two rules in imposing them, namely, the rule of uniformity, when they laid duties, imposts, or excises; and the rule of apportionment, according to the census, when they laid any direct tax.
>
> "If there are any other species of taxes that are not direct, and not included within the words duties, imposts, or excises, they may be laid by the rule of uniformity, or not; as Congress shall think proper and reasonable. If the framers of the Constitution did not contemplate other taxes than direct taxes, and duties, imposts, and excises, there is great inaccuracy in their language.
> If these four species of taxes were all that were meditated, the general power to lay taxes was unnecessary. If it was intended, that Congress should have authority to lay only one of the four above enumerated, to wit, direct taxes, by the rule of apportionment, and the other three by the rule of uniformity, the expressions would have run thus: 'Congress shall have power to lay and collect direct taxes, and duties, imposts, [3 U.S. 171, 174] and excises; the first shall be laid according to the census; and the three last shall be uniform throughout the United States.' The power, in the eighth section of the first article, to lay and collect taxes, included a power to lay direct taxes, (whether capitation, or any other) and also duties, imposts, and excises; and every other species or kind of tax whatsoever, and called by any other name. Duties, Imposts, and Excises were enumerated, after the general term taxes, only for the purpose of declaring, that they were to be laid ***by the rule of uniformity***.
> I consider the Constitution to stand in this manner. A general power is given to Congress, to lay and collect taxes, of every kind or nature, without any restraint, except only on exports; **but two rules are prescribed for their government, namely, uniformity and apportionment**: Three kinds of taxes, to wit, duties, imposts, and excises by the first rule, and capitation, or other direct taxes, by the second rule.
>
> "I believe some taxes may be both direct and indirect at the same time. If so, would Congress be prohibited from laying such a tax, because it is partly a direct tax?

"The Constitution evidently contemplated no taxes as direct taxes, but only such as Congress could lay in proportion to the census. The rule of apportionment is only to be adopted in such cases where it can reasonably apply; and the subject taxed, must ever determine the application of the rule.
If it is proposed to tax any specific article by the rule of apportionment, and it would evidently create great inequality and injustice, it is unreasonable to say that the Constitution intended such tax should be laid by that rule...

"**Apportionment is an operation on states**, and involves valuations and assessments, which are arbitrary, and should not be resorted to but in case of necessity.

"**Uniformity is an instant operation on individuals**, without the intervention of assessments, or any regard to states, and is at once easy, certain, and efficacious. All taxes on expenses or consumption are indirect taxes.

"A tax on carriages is of this kind, and of course is not a direct tax.
Indirect taxes are circuitous modes of reaching the revenue of individuals, who generally live according to their income. In many cases of this nature the individual may be said to tax himself. I shall close the discourse with reading a passage or two from Smith's Wealth of Nations.

> 'The impossibility of taxing people in proportion to their revenue, by any capitation, seems to have given occasion to the invention of taxes upon consumable commodities; the state not knowing how to tax directly and proportionally the revenue of its subjects, endeavours to tax it indirectly by taxing their expense, which it is supposed in most cases will be neatly in proportion to their revenue. Their expense is taxed by taxing the consumable commodities upon which it is laid out. (3 Vol. page 331)'."

*Hylton v U.S.*, 3 U.S. 171 (1796)

"The subject matter of taxation open to the power of the Congress is as comprehensive as that open to the power of the states, though the method of apportionment may at times be different. "The Congress shall have power to lay and collect taxes, duties, imposts and excises." Art. 1, § 8. **If the tax is a direct one, it shall be apportioned according to the census or enumeration. If it is a duty, impost, or excise, it shall be uniform throughout the United States**. Together, these classes include every form of tax appropriate to sovereignty. *Cf. Burnet v. Brooks,* 288 U. S. 378, 288 U. S. 403, 288 U. S. 405; *Brushaber v. Union Pacific R. Co.,* 240 U. S. 1, 240 U. S. 12." *Steward Mach. Co. v. Collector,* 301 U.S. 548 (1937), at 581

> "The **_contention_** that the Amendment treats a tax on income as a *direct* tax although it is relieved from apportionment and is necessarily therefore not subject to the rule of *uniformity* as such rule only applies to taxes which are **not** *direct*, thus **destroying** the **two** great classifications which have been recognized and enforced from the beginning, <u>**is wholly without foundation**</u>...", *Brushaber v. Union Pacific RR Co.*, 240 U.S. 1 (1916)

> "...by the previous ruling it was settled that the provisions of the 16th Amendment conferred no new power of taxation, but simply prohibited the previous complete and plenary power of income taxation possessed by Congress from the beginning from being taken out of the **category of indirect taxation to which it inherently belonged**, and being placed in the category of direct taxation subject to apportionment by a consideration of the sources from which the income was derived, ...", *Stanton v. Baltic Mining Co.*, 240 U.S. 103 (1916)

9)     *And whereas* Article I, Section 8, clause 1 requires that all *indirect* taxes be made subject to the *Rule of uniformity* within, across and amongst **all** fifty states:

       **Article I, Section 8, clause 1**

       Congress shall have power to lay and collect Taxes, Duties, Imposts and Excises ...; but all Duties, Imposts and Excises shall be uniform through the United States.

10)     *And whereas*, the *uniformity* of the authorized *indirect* taxation that is required under Article I, Section 8, clause 1, has been historically held by the federal courts to be a constitutional requirement to provide a "*geographical uniformity*" within the imposition and enforcement of the federal *income* tax that is legislated by Congress, - so that the citizens of each and every State, where similarly economically situated to citizens in the other forty-nine States, are all treated **the same** by the tax law, *i.e.*: *uniformly* across all fifty States, - within each tax bracket, - with an equal and *uniform* tax that is laid and enforced on the people of every State, in each tax-bracket.

> "The [income] tax **being an excise**, its imposition must conform to the canon of **uniformity**. There has been no departure from this requirement.

> According to the settled doctrine the uniformity exacted is geographical, not intrinsic. *Knowlton v. Moore, supra,* p. 178 U. S. 83; *Flint v. Stone Tracy Co., supra,* p. 220 U. S. 158; *Billings v. United States,* 232 U. S. 261, 232 U. S. 282; *Stellwagen v. Clum,* 245 U. S. 605, 245 U. S. 613; *LaBelle Iron Works v. United States,* 256 U. S. 377, 256 U. S. 392; *Poe v. Seaborn,* 282 U. S. 101, 282 U. S. 117; *Wright v. Vinton Branch Mountain Trust Bank,* 300 U. S. 440." *Steward Mach. Co. v. Collector,* 301 U.S. 548 (1937), at 583

> "The tax is uniform when it operates with the same force and effect in every place where the subject of it is found. "Uniformity" means all property belonging to the same class shall be taxed alike. it does not signify an intrinsic, but simply **a geographic, uniformity** (*Churchill & Tait v. Conception,* 34 Phil. 969). Uniformity does not require the same treatment; it simply requires reasonable basis for classification.

11) *And whereas* the federal district court in Eastern Virginia (Richmond) has just recently ruled in its *Orders* in Case Number: 3:15cv161, that the federal income tax is a constitutionally authorized ***indirect*** tax under Article I, Section 8, clause 1, taxing authorities, - subject to the rule of *uniformity*;

12) *And whereas* the federal district court of New Jersey has ruled in its *Orders* in Case Number: 14-3937 (KM)(JBC), **exactly the opposite,** *i.e.*: that the federal income tax is a ***direct*** tax without *apportionment* that is allegedly created as new taxing power under the 16th Amendment, **not** Article I;

13) It is therefore clear that the *required **geographical uniformity*** of the alleged federal personal *income* tax has been **completely destroyed** by the federal district courts and judges themselves, through the *arbitrary* and *capricious* enforcement of that **same** tax in the federal district courts in the two different states as, apparently, **two** entirely and fundamentally **different,** constitutional *forms* of taxation, -**being both** a ***direct* unapportioned** tax in the State of New Jersey under the 16th Amendment, **but also** a *uniform **indirect*** tax in the Commonwealth (State) of Virginia under Article I, Section 8[1] according to the district court in Richmond Virginia, - **completely**

---

[1] See exhibited *Memorandum Opinion* of the district court of Virginia

**contradicting** the district court's *operation* and **enforcement** in the state of New Jersey[2]. Thus, *geographical uniformity* between the fifty States is **utterly destroyed.**

14) The existence of **two** entirely **different** *alleged* constitutional foundations and authorities, **both** as allegedly *direct* **and** *indirect* taxation in the two different States' federal district courts at the same time; and the two entirely different *operations at law* **alleged** under the U.S. Constitution at the same time, (apparently existing for the application and enforcement of the federal personal income tax in the different federal district courts of the different several states); - is both **duplicitous** and **unconstitutional** because it blatantly **violates** the required *geographical uniformity* of the tax that is required for it to be constitutionally sustainable in **ANY** of the federal courts; - and therefore, this lack of required *uniformity* (*geographic uniformity*) makes enforcement of the tax in the federal district courts, of **either** *form*, both **arbitrary** and *capricious* until the conflict is resolved in the higher courts of appeals and Supreme Court.

15) These facts certainly call into question which of the **two** *subject-matter jurisdictions* that apparently exist, - the plaintiff claims in this case is applicable and invoked against these specific defendants.

16) *And Whereas*, the federal courts have no lawful ability to allow the plaintiff United States to *arbitrarily* or *capriciously* invoke completely **different** *taxing powers* and alleged constitutional authorities, in different civil actions against different citizens of the several States, to enforce the same tax on *income* differently in the fifty several states;

> "Federal courts are courts of limited jurisdiction. They possess only power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkenen V. Guardian Life ins. Co. of America,* 511 US 375 (1994)

---

[2] See exhibited *Memorandum and Order* of the district court of New Jersey

> "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities ; they are not voidable, but simply void, and this even prior to reversal."
> *Williamson v. Berry*, 8 HOW. 945, 540 12 L.Ed. 1170, 1189 (1850)

17)   Then these defendants do *move* this court to compel the plaintiff United States to make a more definitive statement on the record of this civil action, that **fully** identifies and establishes **all three** required elements of the alleged *subject-matter jurisdiction* of the court that it is alleged by the plaintiff United States can be taken over the action by the court, *as argued* in its *Complaint*: *i.e.*: (1) - the constitutional source of the specific *taxing power* granted and *exercised* in administrative *operational practice*; (2) - the constitutional source of the grant of congressional authority to write law with respect to that *power* granted in (1); and, (3) – the specific statute enacted with respect to the enforcement of that *taxing power* granted and *exercised* in administrative *operational practice*.

18)   The *pro se* defendants believe the court must immediately *stay* all further proceedings in this action until the specific *subject-matter jurisdiction* of the court, is established by the **fraudulent** plaintiff, who **disingenuously argues,** *arbitrarily and capriciously,* **two completely different alleged constitutional authorities**, in the different federal district courts, in the different States of the union.

> "In a long and venerable line of cases, the Supreme Court has held that, without proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit. See, *e.g., Capron v. Van Noorden*, 2 Cranch 126; *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997), 117 S. Ct. 1055, 137 L. Ed. 2d 170. Bell v. Hood, *supra*; *National Railroad Passenger Corp. v. National Assn. of Railroad Passengers*, 414 U.S. 453, 465, n. 13; *Norton v. Mathews*, 427 U.S. 524, 531; *Secretary of Navy v. Avrech*, 418 U.S. 676 , 678 (per curiam); *United States v. Augenblick*, 393 U.S. 348 ; *Philbrook v. Glodgett*, 421 U.S. 707, 721; and *Chandler v. Judicial Council of Tenth Circuit*, 398 U.S. 74, 86-88, distinguished. For a court to pronounce upon a law's meaning or

constitutionality when it has no jurisdiction to do so is, by very definition, an *ultra vires* act." Pp. 8-17.

"Subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court." *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Accord Jordon v. Gilligan*, 500 F.2d 701 (6th CA, 1974) ("[A] court must vacate any judgment entered in excess of its jurisdiction."); *State v. Swiger*, 125 Ohio.App.3d 456. (1995) ("If the trial court was without subject matter jurisdiction of Defendant's case, his conviction and sentence would be void *ab initio*."): *Burrell v. Henderson, et al.*, 434 F.3d 826, 831 (6th CA 2006) ('[D]enying a motion to vacate a void judgment is a per se abuse of discretion.").

A court may not render a judgment which transcends the limits of its authority, and a judgment is void if it is beyond the powers granted to the court by the law of its organization, even where the court has jurisdiction over the parties and the subject matter. Thus, if a court is authorized by statute to entertain jurisdiction in a particular case only, and undertakes to exercise the jurisdiction conferred in a case to which the statute has no application, the judgment rendered is void. The lack of statutory authority to make particular order or a judgment is akin to lack of subject matter jurisdiction and is subject to collateral attack. 46 Am. Jur. 2d, Judgments § 25, pp. 388-89.

19)  Additionally, the Supreme Court has just recently issued a decision in *Sessions v. Dimaya*, #15-1498, that addresses the problem with a law, or assertion of authority to act under law, that is so vague and ill-defined in statute or Constitutional authority that its administration and or enforcement by either the Executive branch, or the federal judiciary, becomes *arbitrary* or *capricious*. In that case the justices write:

> "Vague laws", Gorsuch wrote, "can invite the exercise of arbitrary power ... by leaving the people in the dark about what the law demands and allowing prosecutors and courts to make it up. The law before us today is such a law."
>
> Kagan wrote: "The void-for-vagueness doctrine, as we have called it, guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes," ... "And the doctrine guards against arbitrary or

discriminatory law enforcement by insisting that a statute provide standards **to govern the actions** of police officers, **prosecutors,** juries **and judges**."

Gorsuch wrote that "no one should be surprised that the Constitution looks unkindly on any law so vague that reasonable people cannot understand its terms **and judges do not know where to begin in applying it**." *Sessions v. Dimaya*, 15-1498.

20) So, how is it possible that after 100 years of *income tax* enforcement operations in the federal courts, that the federal district court judges, and the plaintiff United States **cannot even consistently** agree on the *constitutional* source of the *taxing power* and authority exercised, and thus "*do not know where to begin in applying it*", *i.e.*: the statutes, and the true *force* of law authorized under them?

21) *And whereas*, it is **not** the income tax itself, that is alleged unconstitutional by the defendants, but the *arbitrary and capricious* invocation by the federal district court judges of **two completely** and **entirely different** taxing powers and alleged resultant *subject-matter jurisdictions* as the alleged constitutional foundation for the federal personal income tax, - without the constitutionally required *geographical uniformity* in the enforcement of the tax within and across the fifty states by the district courts of those fifty states, - that is constitutionally **required** to sustain the ***indirect*** income taxing *power* that is constitutionally granted as the power to tax by *Impost, Duty* and *Excise*;

22) *And whereas*, Direct taxation of the American people, and their income, is **still** *constitutionally* **prohibited** under Article I, Section 2, clause 3, and Article I, Section 9, clause 4, of the U.S. Constitution, **unless** the *direct* tax is laid in proportion to the census and is apportioned to the "*several States*" for collection;

23) *And whereas*, the 16th Amendment does **not** remove these unrepealed and unamended Article I **limitations** placed upon the *direct* taxation *power*.

> "The Sixteenth Amendment, although referred to in argument, **has no real bearing and may be put out of view**. As pointed out in recent decisions, it does **not extend the taxing power** to new **or excepted** subjects, but merely removes all occasion, which otherwise might exist, for an apportionment among the States of taxes laid on income, whether it be derived from one source or another. *Brushaber v. Union Pacific R.R. Co.*, 240 U.S. 1, 17-19; *Stanton v. Baltic Mining Co.*, 240 U.S. 103, 112-113.", *William E. Peck and Co. v. Lowe*, 247 U.S. 165, 172-73, 38 S.Ct. 432, 433 (1918)

24) *And whereas*, the controlling decision of the Supreme Court in *McCulloch v. State of Maryland*, 17 U.S. 316 (1819), despite holding that the *enabling* enforcement powers of the Constitution were *expansive* (and not limiting), the court still held that the Constitution **forbids** the use of the *enabling* enforcement powers, to enforce a *power* that is constitutionally **prohibited**, <u>as is clearly done</u> by Article I, Section 9, clause 4 of the U.S. Constitution with respect to *disproportionate direct* taxation of *income*.

> "...We admit, as all must admit, that the powers of the government **are limited**, and that its limits are **not to be transcended**. But we think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be **within** the **scope** of the constitution, and all means which are appropriate, which are plainly adapted to that end, **which are <u>not prohibited</u>**, but **consistent** with the **letter** and **spirit** of the constitution, are constitutional ..." *McCulloch v. State of Maryland*, 17 U.S. 316 (1819) [i]

25) *And whereas,* the 16th Amendment does **not** provide for or authorize the *enforcement* of a new or *direct* power to tax income without these extant limitations and controls of Article I - that are still imposed on **all** *direct* taxation; - because the Amendment does **not** actually contain the word "*direct*" in describing the tax on income that is authorized under the Amendment; and because the *McCulloch v. State of Maryland*, 17 U.S. 316 (1819) decision **prohibits** the use of the constitution's enabling enforcement authorities to effect the exercise or enforcement of any *powers* that are

either actually **prohibited by the Constitution;** are **not** specifically granted; or that are inconsistent with the **letter** and **spirit** of the Constitution and its system of ***limitations*** on the granted congressional *powers*; - including the *taxing powers, i.e.*: all *indirect* taxes must be *geographically uniform*, and **all** *direct* taxes must be *proportionately laid* under the census and *apportioned* **only** to the "*several States*" for payment, or they blatantly violate the U.S. Constitution and as such, the defendants are entitled to a trial by JURY in the matter.

> "The Congress "shall have power to lay and collect taxes, duties, imposts and excises." Art. 1, § 8. If the tax is a direct one, it shall be apportioned according to the census or enumeration. If it is a duty, impost, or excise, it shall be uniform throughout the United States. Together, these classes include every form of tax appropriate to sovereignty. *Cf. Burnet v. Brooks,* 288 U. S. 378, 288 U. S. 403, 288 U. S. 405; *Brushaber v. Union Pacific R. Co.,* 240 U. S. 1, 240 U. S. 12." *Steward Mach. Co. v. Collector,* 301 U.S. 548 (1937), at 581.

26)  The limitations and extant requirements and prohibitions on *direct taxation,* are thus **not** removed by the 16th Amendment, to allow the unlimited *direct* taxation of *income* without apportionment, that is being wrongfully judicially imposed and enforced on the Defendants in this case.

27)  *And whereas*, previous to the adoption of the 16th Amendment the taxation of *income* had been repeatedly upheld as a legitimate exercise of the ***indirect*** taxing powers given to Congress, to tax by *excise* under authority granted by Article I, Section 8. see *Springer v. U. S.,* 102 U.S. 586, 26 L. ed. 253 (1880); *Pollock v. Farmer's Loan & Trust,* 158 U.S. 601, (1895); *Pacific Ins. Co. v. Soule,* 7 Wall. 433, 19 L. ed. 95; *Spreckels Sugar Ref. Co. v. McClain,* 192 U.S. 397, 48 L. ed. 496, 24 Sup. Ct. Rep. 376.; *Flint v. Stone Tracy Co.,* 220 U.S. 107 (1911); *Stratton's Independence, Ltd. v. Howbert,* 231 U.S. 399, at 416-417 (1913), *Steward Mach. Co. v. Collector,* 301 U.S. 548 (1937).

"The act now under consideration does not impose direct taxation upon property solely because of its ownership, but the tax is within the class which Congress is authorized to lay and collect under article 1, 8, clause 1 of the Constitution, and described generally as taxes, duties, imposts, and excises, upon which the limitation is that they shall be uniform throughout the United States.

Within the category of indirect taxation, as we shall have further occasion to show, is embraced a tax upon business done in a corporate capacity, which is the subject-matter of the tax imposed in the act under consideration. The Pollock Case construed the tax there levied as direct, because it was imposed upon property simply because of its ownership. In the present case the tax is not payable unless there be a carrying on or doing of business in the designated capacity, and this is made the occasion for the tax, measured by the standard prescribed. The difference between the acts is not merely nominal, but rests upon substantial differences between the mere ownership of property and the actual doing of business in a certain way." *Flint v. Stone Tracy Co.*, 220 US 107, 150 (1911)


'We think that they were used comprehensively, to cover customs and excise duties imposed on importation, consumption, manufacture, and sale of certain commodities, privileges, *particular* business transactions, vocations, occupations, and the like.'

Duties and imposts are terms commonly applied to levies made by governments on the importation or exportation of commodities. Excises are 'taxes laid upon the manufacture, sale, or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges.' Cooley, Const. Lim. 7th ed. 680.

The tax under consideration, as we have construed the statute, may be described as an excise upon the particular privilege of doing business in a corporate capacity, i. e., with the advantages which arise from corporate or quasi corporate organization; or, when applied to insurance companies, for doing the business of such companies. As was said in the Thomas Case, 192 U. S. supra, the requirement to pay such taxes involves the exercise of privileges, and the element of absolute and unavoidable demand is lacking. If business is not done in the manner described in the statute, no tax is payable.

If we are correct in holding that this is an excise tax, there is nothing in the Constitution requiring such taxes to be apportioned according to population. *Pacific Ins. Co. v. Soule,* 7 Wall. 433, 19 L. ed. 95; *Springer v. United States,* 102 U.S. 586, 26 L. ed. 253; *Spreckels Sugar Ref. Co. v. McClain,* 192 U.S. 397, 48 L. ed. 496, 24 Sup. Ct. Rep. 376.", *Flint v. Stone Tracy Co.*, 220 US 107, 151-152 (1911)

28) Then it is clear that, because of the two diametrically **opposing** decisions in the two different cases referenced herein; - in the two different federal district courts in the two different States of the union (Virginia and New Jersey); **then,** this district court **cannot** factually establish the required *geographical uniformity* within the fifty States that is still constitutionally **required** of all *indirect* taxation in this case, because **regardless** of what it attempts to do in this case, **it will irrefutably <u>contradict</u>** what **one** of the district courts in the other two States are doing; - and to be a constitutional enforcement operation *at Law*, they <u>**must all be doing the same thing**</u> in every district court in every State.

> The Supreme Court has repeatedly told the federal judiciary it may not rely on a conclusive presumption to find against a defendant on an essential element of a cause of action. *See Sandstrom v. Montana*, 442 U.S. 510, 521-523, 99 S.Ct. 2450, 2458-2459 (1979); *Stanley v. Illinois*, 405 U.S. 645, 654-657, 92 S.Ct. 1208, 1214-1216 (1972); *Heiner v. Donnan*, 285 U.S. 312, 325-29, 52 S.Ct. 358, 360-362 (1932); *Schlesinger v. State of Wisconsin*, 270 U.S. 230, 46 S.Ct. 260 (1926); *Tot v. United States*, 319 U.S. 463, 468-69, 63 S.Ct. 1241, 1245-1246 (1943); *Vlandis v. Kline*, 412 U.S. 441, 446, 93 S.Ct. 2230, 2233 (1973); *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19, 119 S.Ct. 1961, 1977 (1999), and *Jones v. Bolles*, 76 U.S. 364, 368 (1869).

29) Therefore, since this district court itself cannot change the other district court decisions; then it also **cannot** make a declaration on this fundamental *subject-matter jurisdiction* issue with finality, without destroying the *geographical uniformity* **required** throughout the several States that is *constitutionally* required in the enforcement of the tax by the federal judiciary (by irrefutably being in **conflict** with one of the other decisions of the Virginia and New Jersey district courts).

30) **Nor** may this district **court** lawfully enforce a constitutionally **prohibited** *direct taxing power*, as it is improperly attempting to do by allowing the plaintiff to seek the enforcement of a *direct, unapportioned, disproportionately imposed **direct*** tax

under alleged authority of the 16th Amendment, which is what the plaintiff's IRS has irrefutably *assessed* in *operational practice.*

31) The Defendants therefore ***objects*** to further proceedings in this district court until a more definitive statement is provided by the plaintiff United States providing the formal identification and establishment, on the record of the action in the court, **of all three required elements** of the fully granted *subject-matter* jurisdiction of the court that it is alleged to exist and can be taken by the court over this action <u>*as argued*</u> by the plaintiff.

32) Jurisdiction of the court cannot be taken under statutes alone, without the clear and specific identification and establishment of the constitutional foundational elements that apply and that are relied upon by the plaintiff to file its *Complaint.*

> "So, we conclude, as we did in the prior case, that, although these suits may sometimes so present questions arising under the Constitution or laws of the United States that the Federal courts will have jurisdiction, yet the mere fact that a suit is an adverse suit authorized by the statutes of Congress is not in and of itself sufficient to vest jurisdiction in the Federal courts." *Shoshone Mining Co. v. Rutter, 177 U.S. 505, 513 (1900).*

> "Federal courts are courts of limited jurisdiction. They possess only power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkenen V. Guardian Life ins. Co. of America,* 511 US 375 (1994)

> It remains rudimentary law that "[a]s regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. **The Constitution must have given to the court the capacity to take it,** *and an act of Congress must have supplied it* .... To the extent that such action is not taken, the power lies dormant." *The Mayor v. Cooper,* 6 Wall. 247, 252, 18 L.Ed. 851 (1868); accord, *Christianson v. Colt Industries Operating Co.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379-380, 101 S.Ct. 669, 676-677, 66 L.Ed.2d 571 (1981); *Kline v. Burke Construction Co.,* 260 U.S. 226, 233-234, 43 S.Ct. 79, 82-83, 67 L.Ed. 226 (1922); *Case of the Sewing Machine*

*Companies,* 18 Wall. 553, 577-578, 586-587, 21 L.Ed. 914 (1874); *Sheldon v. Sill,* 8 How. 441, 449, 12 L.Ed. 1147 (1850); *Cary v. Curtis,* 3 How. 236, 245, 11 L.Ed. 576 (1845); *McIntire v. Wood,* 7 Cranch 504, 506, 3 L.Ed. 420 (1813). *Finley v. United States,* 490 U.S. 545 (1989).

33)   Therefore, the Defendants both *moves* and urges this district court to **immediately** *stay* all further proceedings in this action and **compel** the plaintiff United States to properly make a *more complete and definitive statement* on the record of the action, making the complete identification and full and proper disclosure and establishment of the fully-granted *subject-matter* jurisdiction alleged to exist in order for the court to be able to take jurisdiction over the specific *claims* made by the plaintiff's *Complaint* in this legal action.

> "Court must prove on the record, all jurisdiction facts related to the jurisdiction asserted." *Latana v. Hopper,* 102 F.2d 188; *Chicago v. New York,* 37 F.Supp. 150

> "A judgment is void if the court acted in a manner inconsistent with due process. A void judgment is a nullity and may be vacated at any time." *In re Marriage of Hampshire,* 261 Kan. 854, 862, 934 P.2d 58 (1997).

> "The consequences of an act beyond the court's jurisdiction in the fundamental sense differ from the consequences of an act in excess of jurisdiction. An act beyond a court's jurisdiction in the fundamental sense is void; it may be set aside at any time and no valid rights can accrue thereunder." *People v. Ruiz,* (1990) 217 Cal. App. 3d 574, 265 Cal. Rptr. 886

> "However late this objection has been made, or may be made in any cause, in an inferior or appellate court of the United States, it must be considered and decided, before any court can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction. Jurisdiction is the power to hear and determine the subject matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them; the question is, whether on the case before a court, their action is judicial or extra-judicial; with or without the authority of law, to render a

judgment or decree upon the rights of the litigant parties." *State of Rhode Island v. Com. of Massachusetts*, 37 U.S. 657, 718 (1838)


"Judgment is a "void judgment" if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process." *Klugh v. U.S.*, D.C.S.C., 610 F.Supp. 892, 901.


"Void judgments are those rendered by a court which lacked jurisdiction, either of the subject matter or the parties," *Wahl v. Round Valley Bank* 38 Ariz. 411, 300 P. 955 (1931); *Tube City Mining & Milling Co. v. Otterson*, 16 Ariz. 305, 146 P. 203 (1914); and *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 2d 278 (1940).


"A void judgment is one that has been procured by extrinsic or collateral fraud or entered by a court that did not have jurisdiction over the subject matter or the parties." *Rook v. Rook*, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987)


Respectfully submitted,

by *[signature]*
Paul Kenneth: Cromar
9870 N. Meadow Drive
Cedar Hills, UT 84062 usA


And


*[signature]*
Barbara Ann: Cromar
9870 N. Meadow Drive
Cedar Hills, UT 84062 usA


May 23, 2018

## CERTIFICATE OF SERVICE

I, Paul Kenneth Cromar, certify that a true copy of the attached *Defendants' Reply & Motion for a More Definitive Statement* has been served via Certified Mail to the following:

Ryan S. Watson, Trial Attorney
US Department of Justice, Tax Division
P.O. Box 683
Washington, D.C. 20044                    Certified Mail # 7015 0920 0000 7112 3611

KENYON D. DOVE & THOMAS W. FARRELL
SMITH KNOWLES, PC
2225 Washington Blvd, Suite 200
Ogden, UT 84401                    via email    kdove@smithknowles.com
                                                tfarrell@smithknowles.com

STEVEN W. LEWIS
Utah Attorney General's Office
160 East 200 South, 5th Floor
Salt Lake City, UT 84114           via email    swlewis@agutah.gov

JEFFREY R. BUHMAN (7401)
Utah County Attorney
M. CORT GRIFFIN (4583)
Deputy Utah County Attorney
100 E. Center, Suite 2400
Provo, UT 84606                    via email    cortg@utahcounty.gov

PAUL JARVIS
UCCU
188 West 5200 North
Provo, UT 84604                    via email    paulj@uccu.com


*/s/ Paul Kenneth: Cromar*      And      */s/ Barbara Ann: Cromar*
Paul Kenneth: Cromar                      Barbara Ann: Cromar
9870 N. Meadow Drive                      9870 N. Meadow Drive
Cedar Hills, UT 84062 usA                 Cedar Hills, UT 84062 usA

June 5, 2018

# END NOTES

*McCulloch v. State of Maryland*, 17 U.S. 316 (1819)

---

[i] "The subject is the execution of those great powers on which the welfare of a nation essentially depends. It must have been the intention of those who gave these powers, to insure, so far as human prudence could insure, their beneficial execution. This could not be done, by confiding the choice of means to such narrow limits as not to leave it in the power of congress to adopt any which might be appropriate, and which were conducive to the end. This provision is made in a constitution, intended to endure for ages to come, and consequently, to be adapted to the various crises of human affairs. To have prescribed the means by which government should, in all future time, execute its powers, would have been to change, entirely, the character of the instrument, and give it the properties of a legal code. It would have been an unwise attempt to provide, by immutable rules, for exigencies which, if foreseen at all, must have been seen dimly, and which can be best provided for as they occur. To have declared, that the best means shall not be used, but those alone, without which the power given would be nugatory, would have been to deprive the legislature of the capacity to avail itself of experience, to exercise its reason, and to accommodate its legislation to circumstances. If we apply this principle of construction to any of the powers of the government, we shall find it so pernicious in its operation that we shall be compelled to discard it. ....

The baneful influence of this narrow construction on all the operations of the government, and the absolute impracticability of maintaining it, without rendering the government incompetent to its great objects, might be illustrated by numerous examples drawn from the constitution, and from our laws. The good sense of the public has pronounced, without hesitation, that the power of punishment appertains to sovereignty, and may be exercised, whenever the sovereign has a right to act, as incidental to his ***constitutional powers***. It is a means for carrying into execution all sovereign powers, and may be used, although not indispensably necessary. It is a right incidental to the power, and conducive to its beneficial exercise.... We think so for the following reasons: 1st. The clause is placed among the powers of congress, not among the limitations on those powers. 2nd. Its terms purport to enlarge, not to diminish the powers vested in the government. It purports to be an additional power, not a restriction on those already granted. No reason has been, or can be assigned, for thus concealing an intention to narrow the discretion of the national legislature, under words which purport to enlarge it. The framers of the constitution wished its adoption, and well knew that it would be endangered by its strength, not by its weakness....

We admit, as all must admit, that the powers of the government **are limited**, and that its limits are **not to be transcended**. But we think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. **Let the end be legitimate**, let it be **within the scope** of the constitution, and all means which are appropriate, which are plainly adapted to that end, **which are not prohibited**, but consistent with the letter and spirit of the constitution, are constitutional ..." *McCulloch v. State of Maryland*, 17 U.S. 316 (1819)